

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 09, 2024.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-50678-cag |
| | § | |
| JACK CARROL STRANGE, JR. and | § | |
| ROBYN LYNN MILLER-STRANGE, | § | |
| Debtors. | § | CHAPTER 7 |
| | § | |

| | | |
|---|---|---|
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| Plaintiff | § | |
| v. | § | ADVERSARY NO. 23-05041-cag |
| | § | |
| JACK CARROLL STRANGE, JR. | § | |
| ROBYN LYNN MILLER STRANGE | § | |
| AIDA MARGARITA NELSON, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION ON PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 7)**

Came on to be considered on April 23, 2024, the trial on the merits on Plaintiff John Patrick

Lowe, Chapter 7 Trustee's ("Plaintiff" or "Trustee") Amended Complaint for Avoidance of Actual

and Fraudulent Transfer of Debtors' Property Pursuant to the Texas Uniform Fraudulent Transfer

1

Act and 11 U.S.C. §§ 544(b) and 550 (ECF No. 7)[1] ("Complaint"). The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is referred to this Court under the District's Standing Order of Reference. This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances). Venue is proper in the Western District of Texas under 28 U.S.C. § 1409. The following is the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052(a).[2] The parties consent to this Court's authority to enter final orders and a final judgment in this adversary proceeding.[3] For the reasons stated in this Memorandum Opinion, the Plaintiff's claims for relief are **GRANTED IN PART** on the basis of the badges of fraud and **DENIED IN PART** on all other bases.

### BACKGROUND[4]

On or about November 14, 2018, Creditor Used Cars, Inc. ("Used Cars, Inc.") sent demand letters via certified mail to Debtors demanding payment on a promissory note that was in default ("Demand Letters"). Used Cars, Inc. received no response. As a result, on December 12, 2018, Used Cars, Inc. filed its Original Petition against Debtors in a state court lawsuit, styled ***Used Cars, Inc. v. South Texas Lending Services, LLC DBA South Texas Auto Brokers, Jack C. Strange Jr. and Robyn L. Miller Strange, Jr.***, Case No. 18-12-00471CVF, in the 81st Judicial District of Frio County, Texas, for the amount due and owing on the promissory note and for other causes of action ("State Court Lawsuit"). On July 11, 2019, judgment was rendered in favor of Creditor

---

[1] "ECF" refers to the electronic case file docket number.
[2] The Federal Rules of Bankruptcy Procedure shall be referred to as the "Bankruptcy Rule(s)" unless otherwise noted.
[3] Proposed Joint Pre-Trial Order of Plaintiff, John Patrick Lowe, Chapter 7 Trustee and Debtors/Defendants Jack C. Strange, Jr., Robin L. Miller Strange and Defendant Aida Margarita Nelson ("PTO") at ¶ III.
[4] The Background Section of this Memorandum Opinion is derived from Plaintiff's Complaint (ECF No. 7).

Used Cars, Inc. and against the Debtors in the amount of $302,076.73 (the "$302,076.73 Judgment").

Used Cars, Inc. alleged that it did not know that, on December 11, 2018, shortly after receiving the Demand Letters, Debtors executed and delivered a deed. The deed conveyed to Aida Margarita Nelson, the stepmother of Davey Nelson, who is a friend and business partner of Debtor Jack C. Strange, Jr., interest in certain real property (the "Transferred Property"). This is the same property that the Trustee asserts was fraudulently transferred. On the date of the transfer, the Transferred Property is alleged to have had a fair market value of approximately $1,000,000.00. The Trustee contends that Debtors did not receive reasonably equivalent value in exchange for the transfer and that it was made to avoid paying the debt owed to Used Cars, Inc., for which Used Cars, Inc. had already sent demand for payment and intended to sue Debtors.

The Trustee also alleges that Davey Nelson knew of Debtors' financial condition and wanted to buy the Transferred Property. Davey Nelson engaged his stepmother, Aida Margarita Nelson, to purchase the Transferred Property instead of his buying it directly from Debtors. Davey Nelson also agreed to make monthly payments to Aida Margarita Nelson towards the amount that the latter had paid Debtors, and then upon full payment, Aida Margarita Nelson was to convey the property to him.

On or about November 25, 2019, Used Cars, Inc. filed a state court petition under a fraudulent transfer theory against Debtors. On June 26, 2022, Debtors filed their Chapter 7 bankruptcy ("Petition Date"). John Patrick Lowe was appointed the Chapter 7 Trustee. The Debtors did not list the Fraudulent State Court Lawsuit in their bankruptcy schedules or statement of financial affairs that they signed under oath.

The Trustee did not become aware of the Fraudulent State Court Lawsuit until Used Cars, Inc. filed its motion to terminate the automatic stay to proceed with the Fraudulent State Court Lawsuit. The Trustee objected on the grounds that the bankruptcy estate owns the claims to avoid the Debtors' transfer of the real property identified in the Fraudulent State Court Lawsuit. The Trustee obtained a Court order terminating the automatic stay for the Trustee to pursue the claims of a fraudulent transfer by Debtors. The Fraudulent State Court Lawsuit is the Removed Case in this Adversary Proceeding.

### PARTIES' CONTENTIONS

The Trustee alleges that the transfer of the Transferred Property from the Debtors to Defendant Nelson is fraudulent based on §§ 24.005(a)(1), 24.005(b), 24.005(a)(2)(B), and 24.006(a) of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). 11 U.S.C. § 544(b) grants the Trustee the authority to pursue avoidance actions under applicable state law. The Trustee invokes § 550(a) to avoid the transfer to Defendant Nelson and recover the Transferred Property for the benefit of the Debtors' bankruptcy estates. The Trustee claims that Debtors' transfer of the Transferred Property was made with the actual intent to hinder, delay, or defraud Used Cars, Inc.

Further, the Trustee argues that the transfer of the Transferred Property was constructively fraudulent because Debtors made the conveyance without receiving a reasonably equivalent value in exchange for the transfer. Moreover, the Trustee argues that Debtors incurred or reasonably believed they would incur debts that they would not be able to repay. The Trustee contends that Debtors' transfer was a fraudulent conveyance as to Used Cars, Inc., whose claim arose before the transfer was made, that this transfer was made without receiving a reasonably equivalent value in exchange for the transfer, and that Debtors were insolvent at that time or became insolvent because of the transfer.

Defendant Nelson asserts that she bought Jack Carroll Strange. Jr.'s fifty percent (50%) interest in the Property for reasonably equivalent value as defined in § 24.004(d) of TUFTA. Defendant Nelson maintains she had no intent to hinder, delay, or defraud Used Cars, Inc. Defendant Nelson states she is not an "insider" as defined in § 24.002(7) of TUFTA. Defendant Nelson asserts she purchased the Transferred Property in good faith. Further, Defendant Nelson contends (without specificity) that offsets should be applied. Defendants Jack C. Strange, Jr. and Robyn L. Miller Strange adopt Defendant Nelson's contentions and further state that they had no intent to hinder, delay, or defraud Used Cars, Inc. and that the transfer occurred in the normal and ordinary course. Defendants also allege that the Trustee's claims are barred by the statute of limitations, laches, estoppel, waiver, and unclean hands.

### STIPULATIONS OF FACT PURSUANT TO JOINT PRE-TRIAL ORDER

The parties submitted a Joint Pre-Trial Order in advance of trial (ECF No. 22) in which the parties stipulated to the following facts:

On August 10, 2016, both Debtor Jack Strange, Jr. and his friend and business partner David Nelson, Jr. ("Davey Nelson"), purchased the Transferred Property via a cash warranty deed from the Golden Peanut Company. On February 27, 2017, Debtor Jack Strange, Jr. and Davey Nelson procured a market value appraisal on the Transferred Property from the Southwest Appraisal Group for $670,000. On November 3, 2017, Debtor Jack Strange, Jr. submitted a Commercial Loan Application to Security State Bank ("SSB"). Jeff Brymer, owner of Creditor Used Cars, is a member of the Board of Directors of SSB. On November 27, 2017, SSB requested a property appraisal of the Transferred Property which showed a market value of $950,000.00 ("Flato Appraisal").

On January 24, 2018, Debtors and their auto company entered into a loan agreement with Used Cars, Inc. for a line of credit in the amount of $400,000.00. Also on June 13, 2018, Debtor Jack Strange, Jr. executed a promissory note payable to SSB secured by the Transferred Property. At this time, Debtors and their company were not in default with Used Cars, Inc. On June 13, 2018, Davey Nelson and his wife deeded the Transferred Property to Debtors, without reservation of ownership interest or rights recited in the deed (the "June 13, 2018 transfer").

On or about July 31, 2018, Debtors closed their auto business. On November 14, 2018, Used Cars, Inc. sent Debtors and their auto company a demand letter. Less than a week later, on November 20, 2018, Debtor Jack Strange met with Jeff Brymer, president of Used Cars, Inc., indicating he needed more time to obtain another loan to pay his past due payments to Creditor Used Cars, Inc.

On December 11, 2018, without informing Used Cars, Inc., Debtors deeded the Transferred Property to Defendant Nelson for $300,000.00, an amount at least one-third the amount of its value as determined by the Flato Appraisal and forty-five percent (45%) of the Southwest Appraisal.

On December 12, 2018, Creditor Used Cars filed a state court petition against Debtors and their auto company.

On June 26, 2022, the eve of the Fraudulent State Court Lawsuit trial, Debtors filed for a chapter 7 bankruptcy petition. John Patrick Lowe was appointed the Chapter 7 Trustee. Debtors did not list the Fraudulent State Court Lawsuit in their bankruptcy Schedules and Statement of Financial Affairs that they signed under oath, nor have amended them since. Used Cars, Inc. timely filed its proof of claim in Debtors' bankruptcy based on its $302,076.73 Judgment without objection by Debtors. Creditor Used Cars filed an Adversary Complaint to Determine Dischargeability of its claim identified in the proof of claim. Debtors did not answer and failed to

plead or otherwise defend against Creditor Used Cars, Inc.'s Complaint. Used Cars, Inc. obtained a default judgment with a finding that its claim is nondischargeable debt.

On March 9, 2023, Debtors received their chapter 7 discharge. Subsequently, Used Cars, Inc. filed a Motion to Lift Stay to proceed with the Fraudulent State Court Lawsuit. Debtors did not list the Fraudulent State Lawsuit in the bankruptcy schedules so the Trustee did not learn about the lawsuit until Used Cars Inc.'s Motion to Lift Stay was filed. The Trustee objected to Used Cars, Inc.'s Motion to Lift Stay and maintained that pursuant to 11 U.S.C. § 541(a)(3), "the avoidance claims, and any recoveries from prosecuting these claims are assets of the bankruptcy estates . . . Only the Trustee may pursue or prosecute these claims . . . ." (ECF No. 48, ¶ 11).

On May 4, 2023, the Trustee removed the Fraudulent State Court case to the Bankruptcy Court under this Adversary No. 23-05041, and on June 12, 2023, filed his Amended Complaint as Plaintiff seeking to recover the Transferred Property transferred from Debtors to Defendant Nelson for the benefit of all the unsecured creditors.

### FINDINGS OF FACT

All the exhibits brought by the parties were admitted into evidence: Plaintiff Trustee ("P") 1–13; Defendant Nelson ("DN") 1; and Defendants Strange ("DS") 1–8. Eight witnesses testified: John Patrick Lowe, chapter 7 Trustee[5]; Jeff Brymer, president of Used Cars, Inc.; Franklin Flato, (appraiser); Aida Margarita Nelson (Defendant); David Nelson (friend/business partner of Jack Strange and stepson to Aida Nelson); Matthew Franklin (attorney/closing agent); Jacklyn Brown (Vice-President of Security State Bank); and Defendant Jack Strange. The Court weighs the testimony of Brown more heavily because the Court found her testimony to be more credible and persuasive because she had no financial or family interests in the case. The other witnesses were

---

[5] Mr. Lowe testified only as to not knowing about this lawsuit until counsel for Used Cars, Inc. filed its motion for relief from stay. Defendants did not cross exam Mr. Lowe or call him as a witness in their case in chief.

credible, but the Court did not find the appraisal testimony probative of value given the uniqueness of the property and the lack of comparable sales. Further, the collective testimony of the witnesses (other than Brown and the two appraisers) did not add to the stipulations of fact and documentary evidence. In sum, the parties provided evidence on three issues: (1) did Debtors transfer a one-half interest or full interest in the property and was the transfer subject to any limitations; (2) did Nelson purchase the property for reasonable equivalent value; and (3) whether Nelson is an insider.

**Jeff Brymer**

Brymer explained that the Stranges entered into a loan agreement with Used Cars, Inc. for $400,000.00 on November 3, 2017. Brymer stated that Jack Strange told him on July 10, 2018, that he would be closing his used car business and liquidating his car inventory and other assets of his business. Brymer testified that through counsel he sent a demand letter to Jack Strange seeking payment of the balance due on the $400,000.00 loan.[6] Brymer stated that Jack Strange told him he needed more time to pay him the balance due on the note. After not receiving payment, Brymer instructed his counsel to take a judgment on the unpaid balance. Brymer stated that he did not know about the transfer of the Transferred Property prior to taking a judgment against the Stranges.

Brymer acknowledged on cross-examination that he was aware that Jack Strange and Davey Nelson were partners in several businesses together and had a lending relationship with SSB. Brymer stated, as a director of SSB, that he was on the loan committee for approval of loans. Brymer explained that he worked approximately two hours per week at SSB and that he owns nearly $1.4 million in SSB stock, which represents approximately 0.5 percent of the total SSB stock. Brymer stated that he made the motion to approve the SSB loan to Jack Strange. Brymer

---

[6] Jack Strange attempted to suggest that he did not know about the demand letters, but that assertion is clearly incorrect considering Strange had in person meetings with Brymer in December 2018 to ask for more time to pay back the loans. The evidence shows that part of the reason Strange met with Brymer was to avoid the filing of a lawsuit after demand was made.

noted that he did not know about the 50 percent ownership each by Nelson and Strange of the Transferred Property.[7] Further, Brymer stated that he did not know that Davey Nelson[8] had conveyed his alleged 50% interest in the Transferred Property to Strange.

Brymer testified that demand was made on Strange to pay the past due balance on the promissory note with Used Cars, Inc. on November 14, 2018. (P-8). Prior to that, Brymer agreed that the Stranges had made their January 2018 through June 2018 payments timely. Brymer agreed that the original lawsuit for collection on the Used Cars, Inc. note was filed on December 8, 2018, and that, based on other testimony and documentation, the Transferred Property was transferred on December 11, 2018, roughly three days after Strange was sued. Brymer agreed that the Transferred Property was not collateral for the Used Cars, Inc. loan. Brymer also noted that Used Cars, Inc. litigation file has been destroyed because Used Cars, Inc. was going out of business.

## Franklin Flato

Flato prepared a restricted appraisal[9] on the Transferred Property on November 17, 2017. (P-13). Flato has a Texas appraisal license and has been an MIA designated appraiser since 2003. Flato determined that the Transferred Property[10] has a market value of $950,000.00. Flato concluded that the highest and best use of the property is for commercial redevelopment or

---

[7] Defendants attempted to argue through extrinsic evidence that Brymer knew that Strange and Nelson each owned 50% of the Transferred Property. The Court sustained Plaintiff's objection that Defendant could not introduce parole evidence to demonstrate Nelson's and Strange 50% ownership in the Transferred Property when the loan documents demonstrate that Jack Strange sold the Transferred Property to Aida Nelson. *See* Plaintiff ("P") Exhibit 7 (commercial contract for sale) and P-8 (commitment for tile insurance) showing Strange as the 100% owner of the Transferred Property. Further, the Defendants posited that Brymer unduly influenced the SSB Board into making the loan to Strange given his ownership interest in SSB stock. Rather, Brymer had a minuscule ownership interest in SSB stock and was only one of the directors who approved the loan to Strange.

[8] Davey Nelson testified that he could not be considered for the SSB loan because he had unfiled tax returns and unpaid federal income taxes. As such, only Jack Strange applied for the loan with SSB.

[9] Rule 2-2 of the Uniform Standards of Professional Appraisal Practice states that a restricted appraisal does not include discussions of data, reasoning, and analysis that were used in the appraisal process to develop an opinion of value. (P-13, Bates No. 276).

[10] The Transferred Property was previously used as a peanut processing facility. The buildings located on the property were constructed for processing peanuts.

incorporation of additional structures. (P-13, Bates No. 0277). Flato acknowledged that the appraisal was prepared for mortgage loan purposes and that a restricted appraisal does not require disclosure of the underlying data in the appraisal report.

Flato was aware of the Southwest Appraisal (DN-6) that was prepared prior to Flato preparing his appraisal. The Southwest Appraisal indicated a value of $670,000.00 for the Transferred Property. Flato explained that the difference in value was attributable to the premises being remodeled and that the Southwest Appraisal used older comparable sales. Further, Flato stated that his measurements showed the tract being larger than the Southwest Appraisal indicated. Flato was asked to explain the difference between what Strange and Nelson paid for the property in August 2016 ($180,000.00) and what Flato appraised the property for in November 2017 ($950,000.00). Flato speculated that possibly the sale to Nelson and Strange was a distressed sale. Neither Strange nor Nelson stated in their testimony that they acquired the Transferred Property as a distressed sale purchase.

**Aida Margarita Nelson**

Nelson testified that she acquired the property by a general warranty deed on December 11, 2018. (P-1). The grantors were Jack and Robin Strange. (P-1, Bates No. 0001). Aida Margarita Nelson paid for the property by wire transfer in the amount of $303,809.50. (P-4). Further, Aida Margarita Nelson paid for a title insurance policy that indicated that Jack Carroll Strange, Jr. had title in the Transferred Property by fee simple interest. (P-7). She stated that at the time of her purchase of the Transferred Property, the Stranges had closed their used car business. Aida Margarita Nelson explained that she was able to purchase the Transferred Property with the proceeds from the sale of her home in Carrizo Springs, Texas. She stated that Jack Strange told her about the Transferred Property being available for sale. Nelson testified that she purchased the

Transferred Property from Strange with the intention of enabling her stepson, Davey Nelson, to obtain a loan to buy the property from her.

**<u>Davey Nelson</u>**

Davey Nelson stated that Aida Margarita Nelson is his stepmother and that he and Jack Carroll Strange, Jr. are friends and former business partners. Nelson stated that he and Jack Carroll Strange purchased the peanut factory in August 2016 as a cash sale. The property was purchased with a loan from Jack Mays, and no real estate agent was involved in the transaction. The term of the loan was for one year and the amount loaned was $150,000.00. Nelson stated that he wanted to obtain conventional financing from SSB to refinance the loan and that he conferred with Jackie Brown, vice president at SSB. Nelson stated that he had previously conducted business with SSB. Nelson explained that he sought to refinance the property with SSB because Mays requested that he "pay off his loan to close it out for business reasons."

Nelson described the Transferred Property as a collection of office buildings and peanut silos. Nelson stated that he moved his auto repair and service business to one of the peanut factory buildings because the current location was becoming costly to rent. When Nelson and Strange sought financing with SSB through Jackie Brown, Brown informed them that she did not want Nelson on the note due to tax issues, despite Nelson's timely payments on the peanut factory loan. (DN-7). According to Nelson, Jackie Brown sought an appraisal of the Transferred Property, along with the repayment of the Mays loan and the settlement of an abstract of judgment lien against Nelson, as conditions for financing. Nelson believed that he was a 50% owner of the Transferred Property, yet relinquished his 50% ownership to allow SSB to finance the property. Nelson noted that SSB knew that he was a 50% owner of the Transferred Property. Moreover, Nelson questioned why he would give up his 50% interest in the Transferred Property and operate a business on the

premises with his name on several buildings if he did not partly own the Transferred Property.

**Matthew Franklin**

Franklin is a licensed attorney who specializes in real estate and title work. Franklin explained that he assisted in the sale transaction between Jack Carroll Strange, Jr. and Aida Margarita Nelson. Franklin reviewed the title commitment and searched for outstanding judgments against the property. Franklin explained that the sale between Strange and Aida Margarita Nelson appeared to be a standard transaction with no impediments.

**Jackie Brown**

Brown is a vice president of commercial lending with SSB. She has been employed by the SSB since 2011. Brown explained that loan applicants can apply through her for financing up to $100,000.00, but loan amounts above that amount require Board approval. Loans exceeding $100,000.00 require a financing statement, three years of tax returns, and a loan application. Generally, Brown's job involves forwarding those documents to the SSB Board and presenting the lending request proposal to the Board for consideration. Brown stated that Nelson and Jack Carroll Strange, Jr. discussed with her the possibility of paying the Mays loan in full. Brown also stated that she would need an appraisal to refinance the property and that because Nelson did not have current tax returns, he could not be a included in the loan process.

Brown stated that Davey Nelson had prior loans with the SSB. She also testified that Jeff Brymer was in favor of loaning to Strange. Brown did not express an opinion regarding the value of the Transferred Property, and stated that she never had a conversation with Brymer about the Strange loan. She stated that SSB was more concerned about the substantial difference in value reflected in the Flato appraisal, in comparison to the $670,000.00 Southwest Appraisal. As a result, the SSB Board decided to value the property at $300,000 for financing purposes.

**Jack Carroll Strange, Jr.**

Strange stated that he began his career in the used car business in 2000 and exited the industry in 2018. Strange testified that he never defaulted on the loan with SSB and was current at the time he closed his business. Strange stated that Davey Nelson approached him to buy the Transferred Property by obtaining a cash loan from Jack Mays. Strange said that he and Nelson aimed to first purchase the peanut property and then bulldoze it for redevelopment. Strange explained that the property is in the middle of Pleasanton, Texas. Strange testified that Nelson moved onto the property to operate his auto repair business. Strange agreed that he and Nelson hoped to pay the Mays loan through a refinance of the note with SSB. Like Nelson testified, SSB informed them that an appraisal of the property was needed as a condition of the loan. Strange testified that he thought the Southwest Appraisal value of $670,000.00 was "too high" given that he and Nelson paid $150,000.00 for the property only one year earlier.

Strange testified that the primary reason he sold to Aida Margarita Nelson was because he needed income, explaining that he closed his used car business in June 2018. Strange stated that he and Nelson each owned 50% of the Transferred Property and that Nelson hoped to "buy him out" because he had relocated his auto repair business on the Transferred Property. Strange stated that the primary reason that Nelson was not listed on the SSB note was because of unpaid taxes.

## CONCLUSIONS OF LAW

The Court must determine the following issues[11] from the trial testimony: (1) whether

---

[11] At trial, the Court was also required to determine whether Nelson and Strange each possessed a 50% interest in the property. At trial, Aida Margarita Nelson testified that she only retained a 50% interest in the property, despite the deed itself indicating a 100% ownership interest. (Trial Transcript at 65; lns. 15–19). Plaintiff objected to this testimony on the basis that the testimony violated the parol evidence rule, and that the deed unambiguously conveyed a 100% ownership interest in the peanut factory property. (Trial Transcript at 65; lns. 24–25). The Texas Supreme Court has held that "[w]hen parties have entered into a valid, written, integrated contract, the parol evidence precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019). Pursuant to this rule, at trial, the Court ruled that the four corners of the deed control the ownership interests of the property pursuant to the parol

Strange's conduct satisfied TUFTA §§ 24.005(a) and (b), and (2) whether reasonably equivalent value is satisfied to render judgment in favor of the Trustee under § 24.006(a) of TUFTA.

The Court makes the following conclusions of law:

1. **Fraudulent Conveyance Under TUFTA Provisions §§ 24.005 and 24.006**

In this fraudulent transfer clawback action, the property at stake has an alleged appraisal value ranging between approximately $300,000 to $900,000. The disputed property was transferred by Jack Strange to his business partner's stepmother for slightly under $300,000.

Section 544 of the Bankruptcy Code "allows the Trustee to avoid transfers that satisfy the elements of a fraudulent transfer under state law."[12] *In re Arabella Petroleum Co., LLC*, 647 B.R. 851, 868 (Bankr. W.D. Tex. 2022). The applicable legal standard is the Texas Uniform Fraudulent Transfer Act ("TUFTA"), which provides "a remedy to creditors of debtors who fraudulently transferred their assets." *Corpus v. Arriaga*, 294 S.W.3d 629, 634 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In other terms, TUFTA was "designed to prevent a debtor from defrauding its creditors by moving assets out of reach." *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Under TUFTA, fraudulent transfers are "divided into two types: actual fraudulent transfers, § 24.005(a)(1), and constructive fraudulent transfers, § 24.005(a)(2) and § 24.006." *In re Pace*, 456 B.R. 253, 266 (Bankr. W.D. Tex. 2011). "Section 24.006 differs from section 24.005(a)(2) in that it is available only to creditors whose claims arose before the transfer took place, while section 24.005(a)(2) is available to both present and future creditors." *Id.*

TUFTA, in relevant part for § 24.005, provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent

---

evidence rule. (Trial Transcript at 70; lns. 23–24).
[12] 11 U.S.C. §§ 548(a), 544(b); Tex. Bus. & Com. Code § 24.005 ("TUFTA").

> as to a creditor . . . if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016) (citing Tex. Bus. & Com. Code Ann. § 24.006(a)). Section 24.005 places the burden of proof upon the Trustee to show "by a preponderance of evidence, that the transfers in question were made by the Debtor with the actual intent to hinder, delay or defraud any creditor of the Debtor." *Pace*, 456 B.R. at 267 (citing *In re SMTC Mfg. of Tex.*, 421 B.R. 251, 299 (Bankr. W.D. Tex. 2009)). Section 24.005 "requires only a finding of fraudulent intent on the part of the 'debtor'" and the "transferees' knowing participation is irrelevant under the statute . . . ." *Id.*

Next, Section 24.006 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Corpus v. Arriaga*, 294 S.W.3d at 634. Bearing the plain language of these provisions in mind, the Court will now address each of the aforementioned TUFTA sections, in turn, below.

### a. § 24.005: Actual Fraud

The Court first addresses the Trustee's theory of actual fraud under § 24.005(a)(1) of the

Texas Business and Commercial Code. This provision of TUFTA permits a creditor to "set aside a debtor's fraudulent transfer of assets" unless the transferee "took [the asset] in good faith and for a reasonably equivalent value." ***Wohlstein***, 321 S.W.3d at 776 (citing Tex. Bus. & Comm. Code Ann. § 24.005(a)(1)); ***Janvey***, 487 S.W.3d at 562. This subsection of the provision states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; . . .

Tex. Bus. & Com. Code § 24.005.

If a debtor "admits the fraud," then "intent may be decided as a matter of law." ***BMG Music v. Martinez***, 74 F.3d 87, 90 (5th Cir. 1996). Due to the difficulty of forcing a debtor to outright admit to fraud, courts instead look to "badges of fraud" as circumstantial evidence to "infer intent."[13] ***In re Triplett***, No. 19-42570, 2023 WL 2750899, at *6 (Bankr. E.D. Tex. Mar. 31, 2023). The Fifth Circuit explained in ***Soza v. Hill (In re Soza)***, 542 F.3d 1060 (5th Cir. 2008) that § 24.005(b)'s eleven indicia may be considered by lower courts to determine actual intent under § 24.005(a)(1). Section 24.005(b) provides:

> in determining actual intent under [§ 24.005(a)(1)], consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was not

---

[13] *See, e.g.,* ***Cipolla v. Roberts (In re Cipolla)***, 541 Fed. App'x. 473, 477 (5th Cir. 2013) ("Among the circumstantial evidence of intent to defraud that a court may look to are the 'badges of fraud' in state fraudulent conveyance laws, including the Texas Uniform Fraudulent Transfer Act ('TUFTA')."); *see also* TUFTA § 24.005(b) (listing factors to "determin[e] actual intent under Subsection (a)(1)").

reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*In re Soza*, 542 F.3d at 1066 n. 5. But "[n]ot all, or even a majority, of the 'badges of fraud' must exist to find actual fraud.[14] In fact, "when several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Triplett*, 2023 WL 2750899, at *6 (quoting *Soza*, 542 F.3d at 1067).

Here, the Trustee argues that the following five badges are present: (1) the transfers were to an insider (the stepmother of Debtor's business partner); (2) Debtors concealed the transfer in the schedules; (3) Debtors became insolvent as a result of the transfer; (4) Debtors made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (5) Debtors transferred the property after receiving demand letters from creditor Used Cars for past due payment on a promissory note. (ECF No. 23). Defendant Nelson counters that she purchased the property in good faith (ECF No. 8 at 4) and that she "bought Debtor Strange's fifty-percent (50%) interest in the Property for reasonably equivalent value as defined by section 24.004(d) of TUFTA." (ECF No. 22 at 3). While most of the trial testimony focused on the "reasonably equivalent value" badge analysis, the Court will examine each badge, in turn, below.

    *i.*   <u>*Transfer to an Insider*</u>

The first badge of fraud alleged considers whether a "transfer" was made to an "insider."

---

[14] *Mladenka v. Mladenka*, 130 S.W.3d 397, 405 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (finding that four badges of fraud are sufficient); *see also Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 609 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (finding that five badges of fraud are sufficient); *SMTC Mfg. of Tex.*, 421 B.R. at 300 (finding that four to five badges of fraud are sufficient).

"This badge 'is so significant that in some cases an insolvent debtor's transfer to an insider has caused the court to make a finding of actual fraud in the absence of any other badges of fraud.'" *In re Ritz*, 567 B.R. 715, 743 (Bankr. S.D. Tex. 2017) (citing *In re Toy King Dists., Inc.*, 256 B.R. 1, 129 (Bankr. M.D. Fla. 2000)). An "insider" can be characterized either as a (1) statutory per se insider or a (2) non-statutory insider that does not deal at arm's length. *In re Chapman*, No. 19-70333, 2021 WL 852117, at *523 (Bankr. S.D. Tex. Mar. 5, 2021). A statutory per se insider "is of the kind listed under the Code." *Id.* Section 101(31) states:

> (31) The term "insider" includes—
>> (A) if the debtor is an individual—
>> (i) relative of the debtor or of a general partner of the debtor;
>> (ii) partnership in which the debtor is a general partner;
>> (iii) general partner of the debtor; or
> (iv) corporation of which the debtor is a director, officer, or person in control.

11 U.S.C. § 101(31). Under the Code, a "relative" is an "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree." 11 U.S.C. § 101(45).

Turning to Plaintiff's fraudulent transfer claim under Texas law, TUFTA defines a "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Tex. Bus. & Com. Code § 24.002(12) (WestlawNext 2015). Under TUFTA, an "insider" means, if the debtor is an individual,

> (i)    a relative of the debtor or of a general partner of the debtor;
> (ii)   a partnership in which the debtor is a general partner;
> (iii)  a general partner in a partnership described in Subparagraph (ii) of this paragraph; or

18

     (iv)    a corporation of which the debtor is a director, officer, or person in control.

Tex. Bus. & Com. Code Ann. § 24.002(7)(A).[15] Under § 24.002(11) of TUFTA, "relative" means "an individual related by consanguinity within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined and includes an individual in an adoptive relationship within the third degree." Tex. Bus. & Comm. Code Ann. § 24.002(11) (West). With these provisions in consideration, the Court now analyzes whether Aida Margarita Nelson, as stepmother to Debtor's longtime business partner, qualifies as a statutory per se insider.

It is undisputed that Davey Nelson, a close business partner of Debtor, is a child by marriage of Aida Margarita Nelson, the Defendant. The trial testimony also demonstrated that Davey Nelson and Debtor had an extensive business and personal relationship evidencing a general partnership relationship. For example, Brymer testified that Strange and Nelson were "partners in several things" and had previously operated a sprinkler system company, among other business ventures.[16] (Trial Transcript at 25, lns. 9–11). Nelson falls squarely within both definitions of "relative" under the Code and TUFTA. Thus, the Court need not address whether Defendant satisfies the definition for non-statutory insider status.[17]

### *ii.* *Concealment of the Transfer*

The next badge considers whether Debtor concealed the transfer. Here, it is undisputed that

---

[15] As explained later in this section, while Section 24.002(7) provides illustrations, "the TUFTA definition of 'insider' does not limit an insider to the listed descriptions." ***Estate of Ewers***, No. 01-21-00331-CV, 2024 WL 333334, at *27 (Tex. App.—Houston [1st Dist.] Jan. 30, 2024, no pet.).

[16] For context, other courts have found parties to be "close" when the debtor and transferee were friends for over thirty years and frequently worked together. *See Wohlstein v. Aliezer*, 321 S.W.3d 765 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[17] Individuals who do not qualify under the statutory list of insiders under § 101(31) may be considered "insiders" upon consideration of a two-part test analyzing "(1) the closeness of the relationship between the debtor and transferee, and (2) whether the transaction was conducted at arm's length." ***KOKB Med. Properties, LLC v. DTC Partners, LLC-Series I***, No. 05-22-00403-CV, 2023 WL 5215255 (Tex. App.—Dallas Aug. 15, 2023, no pet.).

Debtor did not include the state court lawsuit in their bankruptcy Schedules and Statement of Financial Affairs that Debtor signed under oath. These documents had not been amended by trial and remain unamended to this date. (ECF No. 22 at 7). This omission is a concealment of the transfer and demonstrates a badge of fraud.

      *iii.*   <u>*Debtor Became Insolvent as a Result*</u>

Another badge of fraud alleged by the Trustee for the Court's consideration is whether "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation as incurred." Tex. Bus. & Com. Code. Ann. § 24.005(b)(9). A debtor is considered "insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." ***Id.*** § 24.003(a). TUFTA provides that a "debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent." *See also **Id.*** § 24.003(b). Pursuant to the Pre-Trial Order, the parties mutually agreed that the following chain of events occurred: (1) Strange closed the auto business on July 31, 2018; (2) Used Cars then sent Strange a demand letter on November 14, 2018; (3) Strange, less than a week later, met with Brymer to discuss obtaining another loan to pay his past due payments, only for (4) Strange to deed the property to Nelson for $300,000 on December 11, 2018. (ECF No. 22 at 5). It is also undisputed that Strange had a state court judgment issued against him in the amount of $302,076.73 on July 11, 2019. (ECF No. 22 at 5).

At trial, Strange testified that in June 2018 through July 2018, he had "no income" and "had gone through all savings" which prompted the sale to the stepmother. (Trial Transcript at 154, ln. 35). Strange testified that he discussed selling the property with Davey Nelson, his business partner, and stated that he "had no money at the time," "was out of work," and "was happy with walking away with a hundred thousand dollars." (Trial Transcript at 156, lns. 13–14).

Next, Brymer testified that Strange and Brymer had several meetings and that in the last

meeting, Strange requested more time to borrow money and use the building as collateral. (Trial Transcript at 20, lns. 16–19). Brymer also explained that Strange had a final meeting planned on December 12, 2018, but declined to attend after informing Brymer that Strange sold the building instead. As previously stated above, Strange attempted to argue at trial that he was unaware of Used Cars sending demand letters. The Court finds this testimony unpersuasive because the parties agreed that in-person meetings occurred to discuss paying the loans over time to avoid a suit. Strange admits in his trial testimony that he was insolvent at the time of the property's transfer. Accordingly, this badge is satisfied.

>        iv.       *Reasonably Equivalent Value*

For a party to receive "reasonably equivalent value," the transaction must be at "arm's length, in good faith, at fair market value, and in the ordinary course of business." ***Janvey***, 487 S.W.3d at 565. "Value" means "that the transfer confer[s] some direct or indirect economic benefit to the debtor" and does not include "love and affection" or "transfers that are purely gratuitous." ***Id.*** at 574. The Court must determine whether reasonably equivalent value "from a reasonable creditor's perspective at the time of the exchange, without regard to the subjective needs or perspectives of the debtor or transferee and without the wisdom hindsight often brings." ***Id.*** at 582.

The Court finds that this particular transaction was at "arm's length." The Court received evidence about the building's condition, use, and property value. To review, the property in question was originally a peanut factory. It later received some remodeling inside its offices and its owner intended to alter the property to become a storage facility. (Trial Transcript at 95, lns. 2–9, 14–15). Ultimately, the facility became an automotive and 24-hour road service company. (Trial Transcript at 97, lns. 4–5). The Court received testimony that the property's condition was "rickety," and its owners merely "slapped a coat of paint on it" and "fixed leaky roofs." (Trial

Transcript at 96, lns. 12–14). Regarding valuation, the Court received multiple appraisals, and finds that the property is worth $300,000 due to the analysis provided by Brown.

Generally, a bankruptcy court has "wide latitude in determining value." *In re 210 Ludlow St. Corp.*, 455 B.R. 443, 447 (Bankr. W.D. Pa. 2011). This is because valuing property is "an inexact science and whatever method used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either." *In re Prewitt*, 552 B.R. 790, 797 (Bankr. E.D. Tex. 2015) (citing *In re Creekside Sr. Apartments, LP*, 477 B.R. 40, 61 (6th Cir. B.A.P. 2012)). The court "is [thus] not bound to accept the values in the parties' appraisals; rather, it may form its own opinion of the value of the subject property after considering all of the evidence presented." *Id.*

When a bankruptcy court weighs "conflicting appraisal testimony," the court "evaluate[s] a number of factors, including the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented." *Id.* (citing *Anderson v. Mega Lift Sys., LLC*, 2007 WL 1643182, at *8 (Bankr. E.D. Tex., June 4, 2007)). Other federal district courts have historically viewed "restricted appraisal reports" with suspicion, finding that "restricted appraisal reports which fail to include supporting information and data lack reliability and should not be admitted into evidence."[18] *Gordon v. New England Cent. R.R., Inc.*, No. 2:17-CV-00154, 2019 WL 4069389, at *6 (D. Vt. Aug. 27, 2019).

---

[18] *See, e.g., Omaha Country Club v. Douglas Cty. Bd. of Equalization*, 645 N.W.2d 821, 828 (Neb. 2002) (holding that a restricted-use appraisal report was not credible evidence because it "could not be fully understood without additional information contained in [the author's] work file"); *Hardy v. United States*, 141 Fed. Cl. 1, 10 (2018) (explaining that "restricted appraisal reports, i.e., appraisals in which 'the intended user of the report is restricted to the client only,' are not permitted ... for 'litigation matters'" under the Uniform Appraisal Standards for Federal Land Acquisitions guidelines); *Boltar, LLC. v. Comm'r*, 136 T.C. 326, 340 (2011) (excluding an appraisal report under Fed. R. Evid. 702 because it was "not the product of reliable methods and the authors have not applied reliable principles and methods reliably to the facts of the case").

Courts that have refused to admit restricted appraisal reports have done so on the basis that the reports fail to comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires that a report include a "complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* (citing Fed. R. Civ. P. 26(a)(2)(B)). This Court views the restricted appraisal cautiously, and thereby gives this evidence less weight.

To begin, the Court first reviewed an appraisal valued by Southwest Appraisal Group[19] at Exhibit 6, which valued the property at $670,000. (P-6). This appraisal was conducted prior to the remodeling. (Trial Transcript at 52, lns. 3–4). The Court also heard testimony from Flato, who prepared a restricted appraisal (Trial Transcript at 49, lns. 13–14) valuing the property at $950,000 after the office remodeling. (Trial Transcript at 50, ln. 1). The restricted appraisal, as admitted by Flato, only requires the appraiser "state what [the appraiser] did and state the value" but does not require the appraiser explain further in addenda. (Trial Transcript at 52, lns. 5–7). Notably, the most poignant testimony came from Brown, a vice president at SSB with significant experience as a commercial and consumer lender. In her professional opinion, the property's estimated value should fall "somewhere around $300,000." (Trial Transcript at 133, lns. 17–19). Brown found it exceptionally unlikely that the property was worth $900,000 and expressed surprise at the "large jump" in value estimated from the original purchase price of $150,000 compared with Strange's initial appraisal of $700,000. (Trial Transcript at 132, lns. 17–18). Brown also stated her belief that the loan was given for $300,000 on an 80% loan to value basis. (Trial Transcript at 132, lns. 23–25). While this belief is not an appraisal, it is strong contemporaneous evidence of what the bank believed at that time of the loan and what the bank was willing to loan.

Because the property's value is within approximately the $300,000 range, the transfer does

---

[19] No testimony in support of the Southwest Appraisal Group was provided to the Court. Further, other than stipulating to the admission of the Appraisal, none of the parties offered evidence in support of the validity of the Appraisal.

not amount to an impermissible "sweetheart deal." This Court gives more weight to Brown's testimony due to her significant credibility and professional experience, and the Court notes that her appraisal valuation appears reasonable considering testimony surrounding the property's condition. Because the transfer amount is nearly identical to the valuation amount, Nelson received fair market value and this badge of fraud is not present.

v. _Transfer of the Property After Demand Letters_

Finally, it is also undisputed by the parties that demand letters were sent by the creditor prior to Strange's transfer of the property to Aida Margarita Nelson. As explained above, the Pre-Trial Order notes that Used Cars then sent Strange a demand letter on November 14, 2018 and Strange deeded the property to Nelson for $300,000 on December 11, 2018. (ECF No. 22 at 5).

For the reasons explained above, the Court concludes that the property transfer constituted a fraudulent transfer under § 24.005(a)(1) of TUFTA because there is ample evidence through the badges of fraud.

**b.  § 24.006(a): Constructive Fraud**

The Trustee also argued that the transfer of the property constituted a constructively fraudulent transfer under section 24.006(a) of TUFTA. In order to prove that a debtor's transfer is fraudulent under § 24.006(a), the Trustee must demonstrate that "(1) the debtor transferred an interest in property; (2) without receiving reasonably equivalent value in exchange for the transfer; and (3) while the debtor was insolvent or became insolvent as a result of the transfer." **_In re Essential Fin. Educ., Inc._**, 629 B.R. 401, 441 (Bankr. N.D. Tex. 2021).

Here, the undisputed facts demonstrate that the transfer was of an interest in property within two years of the date of the filing of the petition. Thus, the first element of § 24.006 is satisfied; but, as discussed above, Aida Margarita Nelson did receive the reasonably equivalent value of the

property. The Trustee has failed to carry its burden under a theory of constructive fraud.

## CONCLUSION

Accordingly, IT IS ORDERED that the Trustee shall recover the property value's amount on the fraudulent transfer claim because the badges of fraud are satisfied and that the resulting funds from the property's sale be returned to the Trustee for the benefit of the creditors of this bankruptcy estate.

IT IS FURTHER ORDERED that the Trustee may seek attorney's fees and costs pursuant to Bankruptcy Rule 7054 and Local Rule 7054 within 14 days of entry of this Memorandum Opinion as allowed by applicable law.

IT IS FURTHER ORDERED that the Trustee submit a proposed judgment in conformity with this Memorandum Opinion within 7 days of entry of this Memorandum Opinion.

IT IS FURTHER ORDERED that all other relief is DENIED.

# # #